1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    BRIAN HOGAN,

11              Petitioner,                    No. CIV S-03-02660 LKK JFM

12         vs.

13    JIM HAMLETT, Warden, et al.

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding with counsel with an application for a writ

17    of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his February 1, 2001,

18    conviction on charges of possession of a destructive device, CAL. PENAL CODE § 12303.2, and

19    possession of materials with the intent to make a destructive device, CAL. PENAL CODE § 12312.

20    As a result of his conviction on both counts, as well as his admission of two prior felony

21    convictions, CAL. PENAL CODE §§ 667(b)-(I); 1170.12, the trial court sentenced petitioner on

22    February 21, 2001, to 25 years to life on count one and the same term to run concurrently on

23    count two.  Petitioner raises seven claims in his petition, filed July 1, 2001, that his prison

24    sentence violates the Constitution.  First, petitioner alleges that insufficient evidence supported

25    his conviction.  Second, petitioner claims that the trial court's jury instruction that an explosive

26    device need not be set to explode denied him the right to a fair trial.  Third, petitioner argues that

1

the trial court abused its discretion by allowing the prosecutor to introduce evidence of

petitioner's prior conviction.  Fourth, petitioner claims ineffective assistance of his trial counsel

because of his failure to object to the admission and use of evidence of petitioner's past crimes.

Fifth, petitioner alleges that the prosecutor committed prejudicial misconduct by commenting

during closing argument on petitioner's failure to testify, thereby violating petitioner's right to

due process, a fair trial, and the right to remain silent.  Sixth, petitioner states that his trial

counsel was ineffective for failing to object to the prosecutor's alleged commentary on

petitioner's failure to testify.  Seventh, petitioner claims that his appellate counsel was ineffective

for failing to preserve on appeal the issue of ineffective assistance of trial counsel.

FACTS[1]

> On the morning of December 30, 1999, defendant was at the Drake home in North Highlands, helping codefendant Drake move various belongings out of the home and into defendant's pickup truck.
>
> Responding to a call from a neighbor reporting suspicious activity, sheriff deputies went to the house.  They went inside after obtaining permission to do so from codefendant Drake.  The living room was cluttered and had numerous firecrackers strewn about.  After being inside the home for a while, the officers noticed what appeared to be a large "M-80" type of firework on the living room coffee table.  They also observed numerous pieces of pipe, many of which were inside a white, five-gallon bucket.  Some of the pipes had their ends crimped and/or capped, and some had a small hole in their centers.  Fearing they had come upon explosive devices, the officers ordered everyone out of the house.
>
> Members of the sheriff department's explosive ordinance disposal (EOD) unit subsequently arrived and looked into the house while still outside.  They saw a black object lying on the coffee table.  It appeared to them to be a pipe bomb.  They saw the white plastic bucket containing the pieces of pipe.  They also saw a green plastic toolbox next to the bucket.  As a result of their observations, they ordered the immediate neighborhood to be evacuated, arranged for the fire department and ambulances to stand by, and decided to

---

[1]   The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Hogan, No.# C037807 (October 21, 2002) (hereinafter Opinion), a copy of which is attached as Exhibit A to petitioner's Second Amended Complaint, filed July 1, 2004.

2

1  employ a remote controlled robot equipped with cameras, jaws and
2  other items to determine the precise nature of the suspicious
   objects.

3  Detective Alfonso Linares, a member of the EOD unit, testified he
   directed the robot to enter the house and retrieve the white plastic
4  bucket.  The robot then took the bucket to the side of the house and
   emptied its contents.  Linares observed the items.  He found eight
5  pieces of metal conduit, six pieces of galvanized pipe with end
   caps, assorted hand tools, pliers, channel locks, PVC and rubber
6  end plugs, emery cloths, sandpaper, and a plastic bag containing
   six empty Piccolo Petes.[Footnote omitted.  A Piccolo Pete is a
7  type of legal firework that, instead of exploding, emits a whistling
   sound as the hot gases escape.]  Several pieces of the pipe and
8  conduit had small holes drilled into their centers.

9  After observing the items, Linares put on the bomb suit, used a
   long pole with a gripper to move some of the items about four or
10 five feet away, and retrieved a piece of equipment known as a PAN
   disrupter, or "precision actuated non-electric" disrupter.  Using 12-
11 gage smokeless shotgun shells, the PAN disrupter can fire different
   types of projectiles at an item to render it safe.  Some of the
12 projectiles it can shoot include a one-inch solid steel slug, a stream
   of water, and so-called "frangible rounds" (frangible because the
13 rounds disintegrate and do not send out any sparks).

14 That day, the EOD unit had available to it two different PAN
   disrupters; one which sat upon its own mount and could by [sic]
15 physically moved and put into position. Another which was
   attached to the robot.  Linares used the stand-alone PAN disrupter
16 in an attempt to knock off the end caps on some of the pipes and
   thereby disengage what could have been explosives.

17
   Later that day, Sergeant Martin Hutchins, Linares' supervisor, put
18 on a bomb suit and, using the grapple pole, picked up the green
   tool box and the black object from inside the house and moved
19 them outside.  The EOD unit first X-rayed the tool box and noticed
   more pipe material inside.  Emptying the box's contents, the
20 deputies observed more pieces of PVC, metal conduit, plastic end
   caps, wax, a plastic item with a fuse wrapped in electrician's tape,
21 emery cloths, sandpaper, and three unopened Piccolo Pete
   firecrackers.  One of the firecrackers was missing a fuse, the other
22 two each had green fuses.

23 The deputies also found in the box's contents an object that
   appeared to be a pipe bomb.  It was approximately three inches in
24 length, wrapped in electrician's tape, but had no fuse.

25 The black object retrieved from the coffee table also appeared to be
   a completed pipe bomb.  It was approximately four inches in
26 /////

3

length, completely wrapped in electrician's tape, and contained a three-inch green fuse in its center.

Linares used the PAN disrupter on each of the two bomb-like objects. He viewed the process on a monitor. After the PAN disrupter fired its slug into the object from the tool box, there was an explosion. The sound was more intense than the sound associated with firing the disrupter. After the explosion, the object emitted a white cloud. Nothing of the object remained except fragments, a small piece of the end caps, and some electrician's tape.

Firing the slug into the object retrieved from the coffee table produced similar results. There was an explosion, the object emitted a white cloud, and little of the object remained. A portion of the pipe remained with a hole from the disrupter's slug. It had one end cap missing and the other punctured with a hole in the center. The pipe had some electrician's tape on it, and also some paper between the metal and the tape.

At trial, a neighbor of the Drake residence, Herman Meyers, testified that he saw defendant walk out of the Drake home early on the morning of December 30, 1999, gingerly carrying with both hands a piece of taped pipe. Later, he saw defendant carrying a five-gallon bucket which had several pieces of pipe sticking out of it.

Another neighbor, Lonnie Pitzer, was present when the deputies arrived on December 30. He testified defendant, at one point, came out of the house and said to him, "They found the bomb." Defendant looked to him to be in a "state of despair" as he said this.

Renea McEntee, codefendant Drake's sister, testified defendant stopped by her home a few days before the arrest to pick up Drake. Defendant asked her if she would let him set off a "quarter stick," i.e., a pipe bomb he had with him. She refused. A few minutes after defendant and Drake drove away, she heard a loud explosion in the distance. When defendant and Drake returned, defendant told her he made pipe bombs "all the time," he had some at his grandmother's residence, and he was planning to set some off while celebrating the millennial New Year's Eve with his wife.

The prosecution also introduced evidence showing defendant and Drake were convicted in 1990 of two counts of arson. ([Cal.] Pen. Code, § 451.) At that time, they made Molotov cocktails which were thrown into the Grant Unified School District's Special Education Center and the Highlands High School football field press box.

(People v. Hogan, slip op. at 4-8.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. <u>Petitioner's Claims</u>

    A. <u>Claim of Insufficient Evidence</u>

        Petitioner's first claim is that his conviction violated fundamental principles of due process and the right to a fair trial.  According to petitioner, the evidence introduced at trial was insufficient to convict him.  Petitioner claims that as a matter of law, a bomb requires a fuse or the equivalent and evidence of explosive materials.  In addition, petitioner argues that his possession of pipe bombs was neither reckless nor malicious.

        The last reasoned rejection of this claim is the decision on petitioner's direct appeal by the Court of Appeal for the State of California, Third Appellate District.  The state appellate court rejected this claim on the ground that:

> A. *Substantial evidence demonstrated the objects were destructive devices*
>
> On this issue, defendant raises two points.  First, he asserts a bomb, to be a "destructive device or explosive," requires a fuse or the equivalent as a matter of law.  He alleges neither of the devices were destructive devices because one did not have a fuse, and no other evidence demonstrated lighting the fuse in the other device would have caused it to explode.  Second, he asserts no evidence proved the powder found inside the devices qualified as an explosive.
>
> 1.  Defendant cites no case holding a bomb requires a fuse as a matter of law to be considered a destructive device.   The legislature has not provided a definition of "destructive device." Instead, it has adopted a nonexclusive list containing a number of different types of weapons which constitute destructive devices.  (Pen. Code, § 12301, subd.(a).)  Any "bomb" or "similar device" is listed as a destructive device.  (*Ibid.* at subd.(a)(2).)
>
> The legislature did not define "bomb," nor did it need to do so.  "'[t]he term "bomb" is not vague either on its face or as construed. . . .'  Persons of common intelligence know what a bomb is."  (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 25, quoting *People v. Quinn* (1976) 57 Cal.App.3d 251, 258-259.)
>
> The courts have shed additional meaning on the term "destructive device."  It is now beyond dispute a pipe bomb is a destructive device for purposes of Penal Code section 12303.2.  (*People v. Dimitrov, supra,* 33 Cal.App.4th at pp. 25-26.)  It is also beyond dispute a destructive device need not have the capability of causing

substantial property damage or injury to life in order to qualify as a destructive device under Penal Code section 12303.2.  (*Id.* at p. 26.)

Moreover, the device need not be immediately capable of exploding to qualify as a destructive device.  (*People v. Heidman* (1976) 58 Cal.App.3d 321, 335.)  The making of a bomb, for example, a stick of dynamite with four batteries, mercury switch, and wiring, qualifies as a destructive device even though no blasting caps necessary to detonate the dynamite are found.  Ruling otherwise, the *Heidman* court reasoned, was contrary to legislative intent and would have ignored evidence this particular dynamite could have accidentally detonated without a blasting cap due to its age and stage of decompensation.  (*Id.* at pp. 335-336.)

Applying these definitions and principles, we conclude substantial evidence supports the finding the two devices at issue here were destructive devices.  Both devices exploded upon impact form [sic] the PAN disrupter and emitted white smoke.  One device was blown to bits, the other was blown into several pieces.  Some of the remnants melted as a result of the explosion.

Moreover, Sergeant David Beach, a member of the EOD unit and qualified by the court as an expert witness for the prosecution, testified the devices were destructive devices because both could have been detonated whether they were missing fuses or whether the fuse was lit.  He stated: "[I]t can be initiated either through shock or from friction, by throwing it at something or having it run over, or it can be initiated by an external heat source, thrown in a fire."  He also testified the coffee table device would have exploded if its fuse had been lit.

This evidence constituted substantial evidence on which the jury could determine the two devices were destructive devices under Penal Code section 12303.2. . . .

B.  *Substantial evidence demonstrated defendant possessed the objects in a reckless or malicious manner*

To be convicted of violating Penal Code section 12303.2, defendant also must have possessed the destructive devices recklessly or maliciously.  Defendant argues the only substantial evidence supporting this element of the crime demonstrates he was trying to make nothing more than "larger Piccolo Petes" with which to ring in the new millennium.  We disagree.

The term "maliciously" "import[s] a wish to vex, annoy, or injure another person, *or an intent to do a wrongful act*. . . ."  (Pen. Code, § 7, subd. 4, italics added.)  Regarding the term "recklessly," the trial court provided the jury the following definition without
/////

7

objection from defendant: "'Recklessly' means an intentional act done with a conscious disregard of the rights and safety of others."

We have already determined substantial evidence supports the determination defendant's devices were not just Piccolo Petes but were in fact destructive devices.  That he possessed these devices maliciously or recklessly is best exposed by defendant's own comment to a neighbor while the police were searching inside the house: "They found the bomb."  He looked in despair while making this comment.

By calling his own device a bomb, defendant admitted he knew it was a destructive device.  His distraught look showed he also recognized he had been caught in the middle of a wrongful act.  Moreover, relying on the neighbor's seeing defendant move something from inside the house that looked like a bomb, and relying on the fact the ingredients used in making pipe bombs were strewn about the house, the jury easily could conclude defendant possessed destructive devices without any regard for the safety of others.  Substantial evidence supports the factual findings necessary to convict defendant under count one. [Footnote omitted.]

(People v. Hogan, slip op. at 9-13.)

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The court must review the entire record when the sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. 307, 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  443 U.S. 307, 324 n.16.

1.  Possession of an Explosive Device[2]

        Under California law, the jury could have concluded that Petitioner unlawfully possessed a destructive device and explosive in violation of CAL. PENAL CODE § 12303.2.[3]  A destructive device is defined as, among other things, a "bomb, grenade, explosive missile, or similar device[.]"  CAL. PENAL CODE § 12301.  An explosive is defined as

> any substance, or combination of substances, the primary or common purpose of which is detonation or rapid combustion, and which is capable of a relatively instantaneous or rapid release of gas and heat, or any substance, the primary purpose of which, when combined with others, is to form a substance capable of relatively instantaneous or rapid release of gas and heat.

CAL. HEALTH & SAFETY CODE § 12000.

        Evidence supports the jury's conclusion that Petitioner possessed destructive devices and explosives.  Sergeant Beach, an expert witness in the area of "bombs, and explosives, and destructive devices," (Reporter's Transcript [hereinafter "RT"] 479, 484), testified repeatedly to finding pipe bombs that exploded.  (RT 491-92, 571, 584-86, 623.)  While petitioner attempted to characterize the source of the explosion as the slug fired from the PAN disrupter, Sgt. Beach consistently testified that the pipe bomb provided the fuel for the

---

[2]  Petitioner titles his first subclaim, "A Bomb Requires A Fuse Or The Equivalent As A Matter Of Law."  However, his argument focuses on the composition of the pipe bombs and whether or not the prosecution introduced evidence of explosive materials contained in the pipe bombs.  Petitioner makes no claim regarding the presence or absence of fuses or whether the physical construction of the pipe bombs precluded them from the definitions contained in the penal code.  The court focuses its analysis accordingly.

[3]  CAL. PENAL CODE §12303.2 reads as follows:

> "Every person who recklessly or maliciously has in his possession any destructive device or any explosive on a public street or highway, in or near any theater, hall, school, college, church, hotel, other public building, or private habitation, in, on, or near any aircraft, railway passenger train, car, cable road or cable car, vessel engaged in carrying passengers for hire, or other public place ordinarily passed by human beings is guilty of a felony, and shall be punishable by imprisonment in the state prison for a period of two, four, or six years."

1    explosions, not the PAN disrupter.  (RT 623, 624, 625.)  According to Sgt. Beach, "[t]he PAN

2    disruptor wasn't the explosion . . . [t]he explosion was the pipe bomb."  (RT 625.)

3            As support for his conclusion that the PAN disruptor was not the source of the

4    explosions, Sgt. Beach described two sources of low explosive gunpowder found at the scene

5    that could be used in a pipe bomb.  Police recovered 9mm shells.  (RT 526.)  In addition, there

6    were in tact as well as hollowed out and emptied fireworks.  (RT 522.)  Petitioner admitted to

7    Renea McEntee that he made pipe bombs using gunpowder and Piccolo Petes.  (RT 862.)

8            Furthermore, Detective Linares, a second expert in the area of explosives and

9    explosive devices, testified that he believed the substance inside the pipe bombs was explosive

10   powder from Piccolo Petes fireworks.  (RT 940.)  Like Sgt. Beach, Det. Linares testified to

11   witnessing two explosions.  (RT 947.)  Petitioner correctly asserts that Det. Linares initially

12   stated that he was unsure if the pipe bomb that did not have a fuse would have exploded if lit.

13   (RT 925-926.)  However, Det. Linares amended his opinion of what constituted a pipe bomb to

14   include devices without fuses.  (RT 925.)  He further confirmed that both pipes that exploded at

15   the scene, including one that did not contain a fuse, were, in his opinion, bombs that contained

16   explosive powder.  (RT 954.)  This opinion was based upon Det. Linares experience, the site and

17   sound of the explosion created when the devices were hit by the PAN disrupter, the resulting

18   damage to the devices and the immediate area, and the residue found in one of the devices after it

19   exploded.  (RT 951-954.)  While petitioner successfully cast some doubt upon Det. Linares'

20   credibility, given the quantum of evidence against petitioner, there was nothing to call the jury's

21   verdict into question.

22           Petitioner argued that the actions of the police and the PAN disrupter caused the

23   explosion, not the pipe bombs or any material contained within them.  However, in light of the

24   evidence above, this claim is insufficient to warrant relief.  The prosecution "need not

25   affirmatively 'rule out every hypothesis except that of guilt'; and . . . a reviewing court 'faced with

26   a record of historical facts that supports conflicting inferences must presume – even if it does not

1  affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of

2  the prosecution, and must defer to that resolution.'" Wright v. West, 505 U.S. 277, 296-97 (1992)

3  (quoting Jackson, 443 U.S. at 326)).  There was no error in the Court of Appeal's determination

4  that sufficient evidence supports the jury's verdict in this case.  The court recommends denial of

5  petitioner's claim for relief.

6          2.  Reckless or Malicious Possession of Pipe Bombs

7          The jury could also have concluded that petitioner possessed the requisite intent to

8  be convicted under CAL. PENAL CODE § 12303.2.  The statute requires reckless or malicious

9  possession of destructive devices.  See supra note 3.  The trial court utilized the statutory

10  definition in its instructions, declaring that malice is "a wish to vex, annoy, or injure another

11  person, or an intent to do a wrongful act."  (RT 1283); CAL. PENAL CODE § 7.  The trial court

12  defined reckless as "an intentional act done with a conscious disregard for the safety of others."

13  (RT 1283.)

14          The Court of Appeal properly described the evidence that supported the jury's

15  conclusion as to this element of the offense.  The Court of Appeal focused on petitioner's own

16  admission made at the scene that the police had found a bomb.  According to the testimony of

17  Lonnie Pitzer, petitioner admitted that police "found the bomb."  (RT 1007.)  This

18  characterization of the pipe bomb found by police during their search, and petitioner's

19  resignation at the time of the admission, demonstrates malice, as petitioner appeared to

20  understand his actions and their potential for harm.

21          The prosecution also provided evidence of petitioner's reckless behavior.  As

22  described by the Court of Appeal, petitioner was seen moving items suspected to be pipe bombs.

23  Ms. McEntee testified that petitioner made pipe bombs in his grandmother's garage and moved

24  them to her house.  (RT 863.)  Furthermore, bomb-making material was strewn about the scene,

25  in areas accessible to other residents of the house.  Sergeant Beach described the materials found

26  at the scene that were intended to be used in the construction of pipe bombs; including cut and

11

1  drilled pipe, tape, emery cloth, sandpaper, Ziploc baggies, sealing wax, matches, glue and rubber

2  cement, wire, and tools.  (RT 499-532.)  Given this evidence, a "rational trier of fact could have

3  found the essential elements of the crime beyond a reasonable doubt."  <u>McMillan v. Gomez</u>, 19

4  F.3d 465, 468-69 (9th Cir. 1994)(quoting <u>Jackson</u>, 443 U.S. at 319 (1979).  The Court of Appeals

5  ruling is neither contrary to, nor an unreasonable application of federal law.  Petitioner's claim

6  for relief should be denied.

7  B. <u>Jury Instruction</u>

8  Petitioner's second claim is that the trial court erroneously instructed the jury on

9  the elements of possession of a destructive device.  The trial court informed the jury that "[o]ne

10  need not possess a destructive device already set to explode in order to be guilty of recklessly or

11  maliciously possessing a destructive device.  (RT 1284.)  Petitioner argues that the trial judge

12  relied upon inapplicable case law to devise the challenged instruction and that there was no

13  evidentiary support for the instruction.

14  The California Court of Appeal addressed this claim as follows:

15  The trial court defined a destructive device in a jury instruction as
    "a weapon, such as a bomb or similar device, which is capable of a
16  relatively instantaneous or rapid release of gas and heat and of
    exploding upon ignition or detonation.

17
    "A destructive device includes a pipe bomb.
18
    "It is not required that a bomb or similar device have the capability
19  of causing substantial property damage or injury to life.

20  "One need not possess a destructive device already set to explode
    in order to be guilty of recklessly or maliciously possessing a
21  destructive device."

22  Defendant asserts no evidence supported the trial court's stating in
    the last paragraph of the instruction a destructive device need not
23  already be set to explode in order for the defendant to be found
    guilty.  We disagree.
24
    Appellate courts have already determined a device need not be
25  ready to detonate or contain all of the necessary parts before it can
    qualify as a destructive device.  (*People v. Morse* (1992) 2
26  Cal.App.4th 620, 646-647 [safety device preventing bomb from

12

1  detonating did not disqualify the bomb as a destructive device];
   *People v. Heideman, supra,* 58 Cal.App.3d at p. 335.)
2  Furthermore, according to Sergeant Beach, defendant needed to do
   little more than expose the devices to a source of heat or throw
3  them with sufficient force against a hard surface to cause them to
   detonate and explode.  They were sufficiently constructed so as to
4  render them destructive devices.  Thus, the challenged portion of
   the instruction was correct as a matter of law.

5

6  (People v. Hogan, slip op. at 13-14.)

7          A challenge to jury instructions does not generally state a federal constitutional

8  claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v.

9  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

10 interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62 (1981); see also

11 Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381

12 (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to deciding whether

13 a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."

14 Estelle, 502 U.S. at 68.  In order for error in the state trial proceedings to reach the level of a due

15 process violation, the error had to be one involving "fundamental fairness."  Id. at 73.  The Court

16 has very narrowly defined the category of infractions that violate fundamental fairness.  Id.

17         Petitioner presents no evidence that the instruction "had a substantial and

18 injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S.

19 619, 637 (1993)(citation omitted).  The challenged jury instruction is a fair statement of the law

20 in California that is factually supported by the evidence in the record.  As noted by the Court of

21 Appeal, the pipe bombs in this case did not need to be set to explode and, as testified to by Sgt.

22 Beach could be ignited without the presence of a fuse through an external source of heat or

23 friction.  (RT 626.)  Sergeant Beach also testified that removing the fuse from a completed pipe

24 bomb does not disarm it.  (RT 556.)  This expert testimony was confirmed by the expert

25 testimony of Det. Linares, who stated that a fuse is not necessary to ignite a pipe bomb as heat

26 /////

1  and friction can detonate the explosives.  (RT 949.)  These opinions were confirmed by the

2  devices' explosions upon impact by the PAN disruptor.

3         While nothing in the record demonstrates that either of the pipe bombs found at

4  the scene were ticking and that an explosion was imminent, ample evidence supports the trial

5  court's instruction.  The court is not permitted upon habeas review to reinterpret state law,

6  however, there is no apparent error in this case.  Under California law, the presence or absence of

7  any formal triggering mechanism is irrelevant to the instruction.  <u>People v. Morse</u>, 2 Cal.App.4th

8  620, 646-647 (1992).  What is critical is the ability of the pipe bombs to explode upon

9  introduction of some outside energy, be it a fuse, a safetied trigger, or external spark.  <u>Id.</u>  The

10 court finds that the jury instruction was neither contrary to, nor an unreasonable application of

11 federal law.  Denial of petitioner's claim is recommended.

12        C.  <u>Admission of Prior Convictions</u>

13        Petitioner next claims that the trial court erred when it admitted evidence of

14 petitioner's prior convictions.  At trial, the prosecutor sought to introduce evidence that petitioner

15 had been convicted twice in 1990 for arson.  Petitioner argues that the trial court's admission of

16 this evidence was in error as the prejudicial effect of the convictions outweighed their probative

17 value.  Furthermore, petitioner argues that evidence relating to this prior act was impermissibly

18 offered to show his character and propensity to perform such acts in general, resulting in a

19 fundamentally unfair trial.

20        The California Court of Appeal addressed this claim as follows:

21        A.  *Proceedings below*

22        Prior to the original trial, the prosecution filed a motion under
           Evidence Code section 1101, subdivision (b), to admit evidence

23        regarding the prior offenses as well as defendant's involvement in
           a fire in 1987 for which he was never charged.  In the second trial,

24        the prosecution raised the issue again by means of a motion in
           limine.  The prosecutor argued showing defendant and Drake used

25        everyday ingredients in their 1990 arsons was probative to prove
           their intent to possess the everyday materials discovered in this

26        case for purposes of making destructive devices.  Defense counsel

14

opposed, claiming the incidents were dissimilar and the prosecution simply wanted to show criminal propensity.

The trial court granted the prosecution's motion in part.  It ruled the evidence of the 1990 arsons was admissible as to count two because it was "directly probative" on the issue of the specific intent required under that count – possession of materials with the intent to make a destructive device, as well as probative for showing a common scheme or plan.  The trial court also determined the probative value of the evidence outweighed the potential for prejudice under Evidence Code section 352.  The court did not admit the evidence for count one and also did not admit any of the evidence surrounding the 1987 fire.

As a result of this ruling, Samuel Jefferson Campbell, a former inspector for the Sacramento County Fire Protection District, testified during the trial concerning the two 1990 arsons and the statements defendant and Drake gave at the time.  The evidence showed defendant and Drake, on May 15, 1990, threw some Molotov cocktails inside the Grant Special Education Center, resulting in $50,000 to $60,000 in damages.  They also used more Molotov cocktails to start a fire in the press box across the street at Highlands High School.  Campbell assisted in searching the home of defendant's grandmother, where ingredients and materials matching those at the arson site were found.

Campbell interviewed defendant and Drake.  Defendant admitted he had made five or six of the devices.  He said he made them because he had been in a fight with some people in North Sacramento, and he intended to use these in retaliation.  Drake stated he saw the Molotov cocktails being made.  He also stated he lit two of the devices thrown at the press box, and actually threw a third device into the press box.

During closing argument, the prosecutor referred to the 1990 crimes on a number of occasions.  He described the facts surrounding the crimes, referred to the crimes when discussing the need to prove malicious possession, argued the crimes demonstrated defendant had the specific intent to use household materials to create bombs and ultimately use them, and told the jury the 1990 crimes showed the existence of a historical relationship between defendant and Drake.  Defense counsel did not object to these statements.

B. *Trial court did not abuse its discretion admitting the evidence*

Evidence of past conduct is admissible when relevant to prove some disputed fact, other than disposition to commit an act, such as motive, opportunity, intent, preparation, plan, knowledge, etc. (Evid. Code. § 1101, subd. (B).)  We review a trial court's decision
/////

15

to admit such evidence under an abuse of discretion standard. (*People v. Harris* (1977) 71 Cal.App.3d 959, 964.)

Defendant claims there was little similarity between the 1990 arsons and the facts of this case so as to show intent or a common plan.  Our Supreme Court has instructed on the degree of similarity required when introducing prior acts as probative evidence of intent or a common plan in a charged offense: "The least degree of similarity (between the [prior] act and the charged offense) is required in order to prove intent.  (See *People v. Robbins* [(1988)] 45 Cal.3d 867, 880.)  '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. . . .' (2 Wigmore, [Evidence], (Chadbourn rev. ed. 1979) § 302, p. 241.)  In order to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]' (*People v. Robbins, supra,* 45 Cal.3d 867, 879.)

"A greater degree of similarity is required in order to prove the existence of a common design or plan.  As noted above, in establishing a common design or plan, evidence of uncharged [or prior] misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' (2 Wigmore, *supra*, (Chadbourn rev. ed. 1979) § 304, p. 249, italics omitted.)  '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' (*Id.* at pp. 250-251, italics omitted; see also 1 McCormick [on Evidence (4ᵗʰ ed. 1992)] § 190, p. 805.)

"To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.  For example, . . . evidence that the defendant has committed uncharged [or prior] criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts.  Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.)

Defendant asserts he was a teenager seeking revenge in 1990.  In 1999, he was a married man wanting to make some noise to celebrate the millennium with his wife.  The devices involved were different.  Also, he claims there could be no common plan because the events occurred nearly a decade apart.

Count two, however, did *not* require the prosecution to prove defendant's *intended use* of the destructive device.  Rather, it required the prosecution to prove defendant possessed materials with the *intent to make* a destructive device.  (Pen. Code, § 12312.)  The 1990 arsons tended to eliminate an innocent mental state in this case, and helped establish defendant harbored a criminal intent to make destructive devices.  The 1990 Molotov cocktails and the 1999 pipe bombs were all made from common household materials, were all destructive devices, and were made by the same people.  The facts also tended to show defendant possessed materials on both occasions pursuant to a similar plan – to make destructive devices.

Defendant argues even if the 1990 facts were probative, the trial court failed to engage in a careful analysis under Evidence Code section 352 to balance the evidence's probative value against its potential for prejudice.  However, the trial court's ruling demonstrates the trial court carefully weighed probative value against prejudicial effect, and determined the evidence of the 1990 arsons could be admitted only as to count two and the evidence of the 1987 uncharged fire could not be admitted at all.

Moreover, the trial court specifically instructed the jury it could consider the facts of the 1990 arsons only for the limited purpose of "determining if it tends to show the existence of the intent which is a necessary element" of count two, not to prove defendant had a disposition to commit the 1999 crimes.

For these reasons, we conclude the trial court did not abuse its discretion admitting evidence of the 1990 arsons for purposes of showing intent and a common plan regarding count two.

(People v. Hogan, slip op. at 15-20.)

In his third complaint, petitioner has not alleged any violation of his federal rights. As such, a federal habeas court has no authority to review challenges to state-court determinations of state-law questions.  Estelle, 502 U.S. at 68.  Habeas review is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975).  A federal habeas court "cannot review questions of state evidence law" and may only consider "whether the petitioner's

1    conviction violated constitutional norms." Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.

2    1999).

3              A state court's evidentiary ruling is not subject to federal habeas review unless the

4    ruling violates federal law, either by infringing upon a specific federal constitutional or statutory

5    provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

6    See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20

7    (9th Cir. 1991).  Even when evidence is erroneously admitted, the federal habeas court cannot

8    interfere absent some apparent violation of fundamental due process and the right to a fair trial.

9    See Hill v. United States, 368 U.S. 424, 428 (1962); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th

10   Cir. 1993).  Accordingly, a federal court cannot disturb a state court's decision to admit evidence

11   on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that

12   it rendered the trial fundamentally unfair."  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.

13   1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986);  see also Mancuso v. Olivarez, 292

14   F. 3d 939, 956 (2002) (a writ of habeas corpus will be granted for an erroneous admission of

15   evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the

16   adversary system will not be competent to uncover, recognize, and take due account of its

17   shortcomings.'" (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).  Despite his

18   protestations to the contrary, such fundamental unfairness is not present in this case.

19             Under California law, evidence of prior felony convictions and other acts are

20   admissible "to prove some fact (such as motive, opportunity, intent, preparation, plan,

21   knowledge, identity, absence of mistake or accident. . .").  CAL. EVID. CODE § 1101(b).  Prior to

22   admitting the evidence, the court must make an inquiry under California Evidence Code section

23   352.  See People v. Castro, 38 Cal.3d 301, 696 P.2d 111, 113, 211 Cal.Rptr. 719, 721 (1985).

24   Only where the probative value of the prior conviction is "substantially outweighed" by the delay

25   that may accrue or prejudice or confusion that may result upon receipt of the evidence is it

26   inadmissible.  CAL. EVID. CODE § 352.

1      In this case, the State sought to introduce evidence of multiple prior acts involving

2  explosives or other incendiary devices.  (RT 7-9.)  One incident involved a fire in a dumpster that

3  appeared to have been set with a candle and yellow paint.  (RT 9.)  Later investigation found

4  similar paint in petitioner's home and splattered on his clothing.  Id.  As the court found

5  insufficient similarity between this incident and either of the charged offenses, evidence of this

6  dumpster fire was not permitted at the trial.

7      However, a second incident involving two rounds of Molotov cocktails thrown at

8  school facilities by petitioner was permitted.  Petitioner and his codefendant were convicted in

9  this incident.  According to the court, admission of facts about the prior incident were relevant to

10  count two of the indictment as both acts tended to prove petitioner possessed the necessary intent

11  to possess materials with the intent to make destructive devices.  (RT 20.)  Upon weighing to

12  prior acts' prejudicial effect, the court concluded that it did not trump the probative value of the

13  evidence given the elements of proof in count two.  Id.  The trial court's ruling, and the Court of

14  Appeal's affirmance of that ruling, was neither contrary to, nor was it an unreasonable

15  application of federal law.

16      The admission of evidence relating to the 1990 arsons did not render petitioner's

17  trial fundamentally unfair.  The probative value of the previous act was enhanced by its similarity

18  with the charged offense.  Petitioner was charged with possession of materials with the intent to

19  make a destructive device.  Previously, petitioner admitted to possessing everyday items and in

20  fact constructing destructive devices that were used to destroy a high school football stadium

21  press box and damaged another school facility.  The similarity of the two incidents is apparent as

22  in both cases petitioner and his codefendant possessed household or everyday items that they

23  later used to create items capable of exploding and causing damage.

24      Given the similarity in prior conduct and the elements of proof necessary for a

25  conviction, the evidence of petitioner's prior act was properly admitted to show intent under

26  § 1101(b).  Petitioner admitted to Inspector Campbell that his intent in possessing the everyday

1  items of gasoline and soap found in 1990 in his grandmother's garage was to create a Molotov

2  cocktail.  This past conduct directly related to the additional evidence introduced by the

3  prosecution at trial, including petitioner's possession of tape, emery cloth, sandpaper, Ziploc

4  baggies, sealing wax, matches, glue and rubber cement, wire, and tools, (RT 499-532), as well as

5  his admission that he constructed pipe bombs in his grandmother's garage, (RT 863).  The State

6  introduced this evidence to prove in count two that petitioner's intent for possessing these

7  everyday items was to create an explosive device.

8      Furthermore, the trial court properly balanced the prior evidence.  See CAL. EVID.

9  CODE § 352.  Indeed, the court provided its reasoning on the record, explicitly detailing its

10  progression through CAL. EVID. CODE §§ 1101(b) and 352.  (RT 20-21.)  There is nothing in the

11  court's reasoning that is contrary to or an unreasonable application of federal law.

12      While all evidence tending to prove guilt is prejudicial, there was nothing about

13  the 1990 acts that made it overly prejudicial.  As described above, the similarity in conduct is

14  apparent.  While 10 years may be a significant period of time between acts, it is not so great to

15  preclude admissibility, particularly given the fact that petitioner was confined or on parole until

16  May 21, 1994.  (Clerk's Transcript on Appeal 453); see Jordan v. Haunani-Henry, 199 F.3d 1332

17  (9th Cir. 1999)(admitting evidence of acts committed "six or seven" years earlier).  The findings

18  of the Court of Appeal are proper and do not "fatally infect[]" the trial such that it was

19  fundamentally unfair.  See Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986).

20      In addition, the court gave a limiting instruction to the jury regarding the proper

21  purposes for which the prior act evidence could be used.  Petitioner argues that this instruction

22  was ineffective as the evidence, once admitted, could be used for any purpose by the jury.  Such

23  an argument is without merit as the court "cannot necessarily assume that the jury misunderstood

24  or disobeyed such instructions."  United States v. Lane, 474 U.S. 438, 450 n.13 (1986); see also

25  Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985)("The court presumes that jurors, conscious of

26  the gravity of their task, attend closely to the particular language of the trial court's instructions

20

1  in a criminal case and strive to understand, make sense of, and follow the instructions given

2  them.").

3          Even if this court were to find error, habeas law does not permit reversal simply

4  because the trial judge may have incorrectly interpreted the evidence code in ruling that the prior

5  acts were admissible under 1101(b).  Estelle, 502 U.S. at 72.  More is required.  In this task,

6  petitioner has failed to make the requisite showing that the admission of evidence concerning his

7  prior conviction rendered his trial fundamentally unfair or resulted in a complete miscarriage of

8  justice.  See Jammal, 926 F.2d at 919.

9          The balancing of the evidentiary factors by the trial court and its determination

10 that petitioner's previous conviction was admissible was neither contrary to, nor an unreasonable

11 application of, controlling principles of United States Supreme Court precedent.  The state

12 court's rejection of petitioner's third claim for relief was a reasoned conclusion consistent with

13 the guarantees of due process.  Petitioner's claim for relief should be denied.

14         D.  Trial Counsel's Failure to Object to the Admission of Evidence of Past Crimes

15         Petitioner's fourth claim is that his trial counsel was ineffective when he failed to

16 object to the prosecutor's admission and use of petitioner's prior convictions.  Petitioner argues

17 that his trial counsel committed an unreasonable error by refusing to object to the prosecutor's

18 direct examination of the investigator who testified about the facts surrounding the 1990 arson

19 convictions.  Petitioner claims that the trial counsel compounded this error when he permitted the

20 prosecutor to comment during closing argument about the previous convictions.

21         The California Court of Appeal addressed this claim as follows:

22         Alternatively, defendant argues his counsel provided ineffective
           representation by failing to object to (1) the scope of details and
23         facts of which former inspector Campbell was allowed to testify;
           and (2) the prosecutor's discussion of the 1990 crimes during his
24         closing argument.  We disagree.

25         "To establish constitutionally inadequate representation, a
           defendant must demonstrate that (1) counsel's representation was
26         deficient, i.e., it fell below an objective standard of reasonableness

21

under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.  When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845, citations and internal quotation marks omitted.)

We have already determined the trial court did not abuse its discretion in admitting Campbell's testimony regarding the 1990 arsons.  Hence, any objection by counsel would likely not have been sustained.  Defendant thus suffered no prejudice by his counsel's failure to object to the admissible evidence. . . .

Similarly, defense counsel's failure to object to statements made by the prosecutor in his closing argument regarding the 1990 crimes was not prejudicial.  The prosecutor's challenged remarks all concerned the similar intent and plans from which both defendant and Drake worked in 1990 and 1999.  The remarks also clarified the prosecution did not need to prove defendant intended to injure anyone in 1999, just that he possessed destructive devices and that he possessed household materials with the intent of using them to make destructive devices.  Objections to these arguments also would have failed.

Finding no prejudice, we conclude defendant did not suffer ineffective assistance of counsel.

(People v. Hogan, slip op. at 20-21.)

The test for demonstrating ineffective assistance of counsel is set forth in

Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

all the circumstances, counsel's performance fell below an objective standard of reasonableness.

Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that

are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The

federal court must then determine whether in light of all the circumstances, the identified acts or

omissions were outside the wide range of professional competent assistance.  Id.  "We strongly

presume that counsel's conduct was within the wide range of reasonable assistance, and that he

/////

1  exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg,

2  898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689).

3           Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at

4  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

5  unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

6  reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

7  In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a

8  fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362 (2000), (citing Lockhart v.

9  Fretwell, 506 U.S. 364 (1993)).

10          Petitioner claims his counsel was ineffective for failing to object to the evidence

11 offered by the State through former fire inspector Campbell or to the prosecutor's closing

12 argument.  Inspector Campbell testified about his investigation of the 1990 fires.  In his

13 testimony, Inspector Campbell described specific facts about how petitioner created multiple

14 Molotov cocktails using gasoline and laundry detergent, where he used the explosive devices,

15 and the motive behind his actions.

16          Given the admissibility of the evidence of petitioner's 1990 acts, it is difficult to

17 see how trial counsel's failure to object was error.  Counsel argued the admissibility of the

18 evidence during pretrial hearings.  The trial judge ruled against petitioner.  Failing to object a

19 second time when that evidence is actually presented and argued can hardly be considered to fall

20 below any standard of reasonableness.

21          Furthermore, it is not apparent that additional objections regarding the scope of

22 the examination of Inspector Campbell would have been proper.  Inspector Campbell testified to

23 the facts surrounding the 1990 Molotov cocktails, bringing forth testimony permitted under CAL.

24 EVID. CODE § 1101(b) that was directly relevant to petitioner's intent in possessing ordinary

25 household items that could be fashioned into Molotov cocktails and other destructive devices.

26 (RT 656-685.)  Any testimony about petitioner's confession and his intent in making the Molotov

1   cocktails was essential to establishing the relevance of the testimony.  Given the foundational

2   nature of the testimony, any objection would likely have been overruled.

3           Petitioner admitted to Inspector Campbell that he made the 1990 Molotov

4   cocktails in an attempt to seek revenge against some individuals with whom he had fought.  (RT

5   670.)  According to petitioner, testimony about this intended malicious act impermissibly

6   permitted the jury to conclude that petitioner's 1999 was also motivated by a malicious purpose.

7   However, any issue of malice is related only to count one.  The complained of testimony was

8   admitted to prove intent under count two.  The jury was properly advised that the testimony of

9   petitioner's prior acts was limited to count two and the court cannot speculate about whether the

10  jury followed the judge's instructions.  See Lane, 474 U.S. at 450 n.13.

11          In addition, the was no error in trial counsel's failure to object during closing

12  argument.  The purposes for the prosecutor's argument as it related to the prior acts was to clarify

13  the intent element of count two.  This was the purpose for which the challenged evidence was

14  expressly permitted.

15          Finally, even if the court were to assume trial counsel's failure to object was

16  deficient, petitioner can make no claim of prejudice.  As described in detail above, the evidence

17  of petitioner's guilt was substantial.  Given the quantum of evidence, there is little indication that

18  petitioner's jury convicted him solely on the basis of his prior acts.  Consequently, the failure to

19  object to Inspector Campbell's testimony about those acts or the prosecutor's argument as it

20  concerned the 1990 arsons and their connection to count two of the indictment was not in error.

21  The court finds no merit to petitioner's claim of ineffective assistance of counsel and

22  recommends denial of his fourth claim for relief.

23          E. Prosecutor Comment on Petitioner's Right to Remain Silent

24          Petitioner's fifth claim is that the prosecutor improperly commented on

25  petitioner's right to remain silent.  During closing argument, the prosecutor stated, "there is one

26  person who may have a little bit more knowledge than Sgt. Beach or Detective Linares or anyone

24

else in this courtroom . . . [o]ne person, and this person is sitting here in court. . . [i]t's not me . . .¶ . . . [i]t's this man right here . . .[h]e's sitting in this chair – Brian Hogan . . . okay . . . Mr. Hogan made these pipe bombs . . . [h]e is what we call the manufacturer of the pipe bombs." (RT 1128.)  According to petitioner, the prosecutor's comment denied fundamental due process and the right to a fair trial by permitting the jury to draw an inference about petitioner's guilt based upon his failure to testify at trial.[4]

Petitioner's trial counsel did not object to the prosecutor's comment.  As a preliminary matter, respondent asserts that petitioner's failure to object resulted in the procedural default of this issue on appeal.  Respondent argues that independent and adequate state law grounds exist to bar petitioner's claim from habeas review.

The California Court of Appeal addressed this claim as follows:

> Defendant alleges the prosecutor committed four incidents of misconduct: . . .; and (4) unlawfully drawing attention to defendant's failure to testify at trial, in violation of *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106].

> As a general rule, "a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion – and on the same ground – the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety."  (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.)  The failure to object timely or request an admonition is excused if either would be futile or an admonition would not have cured the harm.  (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

> Here, defendant made no objection to the challenged remarks nor did he seek a jury admonition.  Nothing in the record indicates a timely objection and admonition would have been futile or unable to cure any harm.  Accordingly, this issue is waived in its entirety.  (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.)

(*People v. Hogan*, slip op. at 21-22.)

/////

---

[4]  Petitioner also notes in his fifth claim that his trial counsel's failure to object to this comment during closing amounted to ineffective assistance.  However, he provides no factual or legal support in his petition for this charge until his sixth claim.

1    The doctrine of procedural default precludes federal court review of a federal

2 claim rejected by a state court "if the decision of that court rests on a state law ground that is

3 independent of the federal question and adequate to support the judgment." <u>Coleman v.</u>

4 <u>Thompson</u>, 501 U.S. 722, 729 (1991).

5          To be deemed adequate, the state law ground for decision must be
           well-established and consistently applied . . . . State rules that are
6          too inconsistently or arbitrarily applied to bar federal review
           generally fall into two categories:  (1) rules that have been
7          selectively applied to bar the claims of certain litigants . . . and (2)
           rules that are so unsettled due to ambiguous or changing state
8          authority that applying them to bar a litigant's claim is unfair.

9 <u>Bennett v. Mueller</u>, 322 F.3d 573, 583 (9th Cir. 2003) (internal citations omitted).  "If the court

10 finds an independent and adequate state procedural ground, 'federal habeas review is barred

11 unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or

12 demonstrate that the failure to consider the claims will result in a fundamental miscarriage of

13 justice.'"  <u>Bennett</u>, 322 F.3d at 580 (quoting <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-05 (9th

14 Cir.1993) (additional citations omitted)).

15          Procedural default is an affirmative defense that must be pleaded and proved by

16 respondents.  <u>See Bennett</u>, 322 F.3d at 584-85.  Once the State pleads the defense, the petitioner

17 has the burden of placing the defense "in issue."  <u>Id.</u> at 585.  "The petitioner may satisfy this

18 burden by asserting specific factual allegations that demonstrate the inadequacy of the state

19 procedure, including citation to authority demonstrating inconsistent application of the rule."  <u>Id.</u>

20 If petitioner meets his burden, the ultimate burden of proof on the defense is with the State.  <u>Id.</u>

21          In response to petitioner's Fifth Amendment claim, respondents adequately

22 pleaded the defense of procedural default based upon petitioner's failure to contemporaneously

23 object to the challenged action by the prosecutor.  (Resp. to Pet.'r's 2d Am. Pet. for Writ of

24 Habeas Corpus 21-22.)  In response, petitioner does not argue that the state rule relied on by the

25 Court of Appeal was inadequate.  Instead, petitioner merely reasserts his initial argument,

26 /////

1  copying verbatim most of the original language contained in his initial petition.  (Pet.'r's

2  Traverse, filed January 3, 2005, at 8-10.)

3        Petitioner has failed to satisfy his burden of placing the adequately pleaded

4  procedural default defense in issue.  California's contemporaneous objection rule is an adequate

5  procedural bar.  See Paulino v. Castro, 371 F.3d 1083, 1092-1093 (9th Cir. 2004)(holding that

6  California's contemporaneous objection rule preclude federal habeas review); Chein v. Shumsky,

7  323 F.3d 748, 752-753 (9th Cir. 2003), reversed on other grounds.  Nor has petitioner made any

8  showing of cause for the alleged default or that a miscarriage of justice would result if his claim

9  is not heard.  Moreover, even if the court were to go beyond the procedural default defense,

10  petitioner's Fifth Amendment claim must be rejected on the merits.

11        The Fifth Amendment guarantees an individual's right to refuse to testify at his

12  trial.  This fundamental right precludes any comment by the prosecutor about an accused's

13  decision not to testify.  Griffin v. California, 380 U.S. 609 (1965).  Indirect comments that "call

14  attention to the defendant's failure to testify, or [are] of such a character that the jury would

15  naturally and necessarily take [them] to be a comment on the failure to testify" are also

16  prohibited.  Lincoln, 807 F.2d at 809.

17        As a preliminary matter, it is not apparent that the prosecutor's comment

18  implicated petitioner's constitutional right to remain silent.  The context in which the complained

19  of comment was made makes it apparent that the prosecutor's argument did not seek to condemn

20  Petitioner for his silence at trial, but rather, for his admissions made during the investigation of

21  the case.  Following his statement that petitioner "may have a little bit more knowledge," the

22  prosecutor outlined that knowledge, noting petitioner's statement made at the scene that the

23  police had found the bomb, and his admission to others that he makes bombs, using pipes and the

24  powder from Piccolo Petes.  (RT 1128-1129.)  Given the framework within which the

25  complained of comment was made, it is apparent that the prosecutor referred to petitioner only to

26  /////

1   highlight his prior admissions and what they said about petitioner's guilt, not what petitioner's

2   silence during the trial said about his guilt.

3     Furthermore, were the court to assume that the prosecutor did comment on

4   petitioner's silence, prosecutorial comments on the refusal to testify only require reversal "where

5   such comment is extensive, where an inference of guilt from silence is stressed to the jury as a

6   basis for the conviction, and where there is evidence that could have supported acquittal."

7   Lincoln, 807 F.2d at 809 (quoting Anderson v. Nelson, 390 U.S. 523 (1968).  It cannot be stated

8   that the prosecutor's comments on petitioner's silence were extensive or that he stressed an

9   inference of guilt from petitioner's silence.

10    There is no indication that any prejudice occurred in this case.  See Brecht, 507

11  U.S. at  637-38 (determining that trial errors are subject to limited review on a collateral appeal

12  and petitioner must demonstrate the error "had a substantial and injurious effect or influence in

13  determining the jury's verdict" and resulted in actual prejudice).  Consequently, any error that

14  occurred was harmless.  See Rice v. Wood, 77 F.3d 1138, 1143 (9th Cir. 1996)(holding Griffin

15  error to be trial errors, not structural errors, and therefore subject to harmless error review); see

16  also Strickland, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had

17  some conceivable effect on the outcome of the proceeding.").  The prosecutor did not make any

18  direct comment on petitioner's refusal to testify.  Rather, the prosecutor noted that the petitioner

19  was the best source for information about the nature of the pipe bombs.  While the prosecutor's

20  single statement during closing argument may have implicitly commented on petitioner's Fifth

21  Amendment right, it is apparent that the prosecutor did not attempt to base a conviction on

22  petitioner's silence given the ample evidence of petitioner's guilt.

23    In addition, the trial judge stated in his jury instructions that no inference of guilt

24  should be drawn from petitioner's refusal to testify.  (RT 1278-1279.)  Given the nature of the

25  prosecutor's comment, such an instruction, and the presumption that the jury followed it, is

26  sufficient to temper any error that may have occurred.  See United States v. Olano, 62 F.3d 1180,

1    1196-1197 (9th Cir. 1995).  In light of these factors, the prosecutor's comment did not amount to

2    error and petitioner's claim for relief should be denied.

3         F.  Trial Counsel's Failure to Object to the Prosecutor's Commentary[5]

4              Petitioner's sixth claim is that his trial counsel was ineffective when he failed to

5    object to the prosecutor's commentary during closing argument as they concerned petitioner's

6    knowledge of the purposes for the explosive devices.  Petitioner argues that his trial counsel

7    should have objected to the alleged Fifth Amendment violation and demanded that the prosecutor

8    be admonished for commenting on petitioner's silence and the comment stricken from the record.

9    Petitioner claims that his trial counsel's performance was below an objective standard of

10   reasonableness, thereby denying him a fair trial.

11             There was no reasoned rejection of this ineffective assistance claim by the state

12   courts.  Rather, upon presentment of this particular claim by petitioner, the California Supreme

13   Court issued a "post-card" denial, stating simply that the "petition for writ of habeas corpus is

14   denied."  (Pet.'r's 2d Am. Pet. for Writ of Habeas Corpus, filed July 1, 2004, Appendix E.)  Such

15   a terse "post-card" denial is an adjudication on the merits.  Gaston v. Palmer, 417 F.3d 1030,

16   1038 (9th Cir. 2005); Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002), mandate recalled and

17   reissued as amended by 311 F.3d 928 (9th Cir. 2002); Hunter v. Aispuro, 982 F.2d 344, 347-48

18   (9th Cir. 1992), cert. denied, 510 U.S. 887 (1993).  There is nothing in the record that indicates

19   that the denial was procedural or not on the merits of petitioner's claim.  See Ylst v.

20   Nunnemaker, 501 U.S. 797, 803 (1991).  This court is obligated to apply AEDPA standards as a

21   result of the fact that there has been an adjudication on the merits, 28 U.S.C. § 2254(d), however,

22

23        [5]  Petitioner failed to raise this and the following claim in his original habeas petitioner
     filed on December 23, 2003.  By order filed April 19, 2004, the court dismissed this petition with
24   leave to file an amended petition raising only exhausted claims and a motion for a stay pending
     exhaustion of all claims then pending before the California Supreme Court.  Petitioner made
25   these filings on June 14, 2004.  On June 23, 2004, the California Supreme Court denied
     petitioner's additional claims.  Petitioner filed his second amended petition containing all of his
26   now exhausted claims on July 1, 2004.

1  given the lack of reasoning provided in the previous denials, it must conduct an "independent

2  review of the record . . . to determine whether the state court clearly erred in its application of

3  controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  Upon review of

4  the record, it is clear that the state court denial of petitioner's claim was objectively reasonable.

5  See Williams, 529 U.S. 409.

6          The test for demonstrating ineffective assistance of counsel is set forth in

7  Strickland, 466 U.S. at 668, and described in detail above.  Given the fact that the prosecutor's

8  comment may not have even risen to a Fifth Amendment violation, it can hardly be argued that

9  defense counsel's failure to object amounted to ineffective assistance.  Assuming the

10 prosecutor's statement was improper the lack of prejudice that resulted from the comment

11 demonstrates that trial counsel's failure to object did not fall outside the range of competent legal

12 assistance and was not ineffective.  See Strickland, 466 U.S. at 687-691, 104 S.Ct. 2052 (stating

13 that defendant must show "a reasonable probability that, but for counsel's unprofessional errors,

14 the result of the proceeding would have been different").  The court finds that denial of this

15 claimed error by the California Supreme Court of petitioner's claim was neither contrary to, nor

16 an unreasonable application of federal law.  Denial of this claim is recommended.

17         G.  Appellate Counsel's Failure to Preserve the Record

18         Petitioner's seventh and final claim is that his appellate counsel failed to preserve

19 the record as it concerned the trial counsel's failure to object to the prosecutor's commentary

20 about petitioner's silence.  The necessity of raising this issue, according to petitioner, was

21 significant and obvious.  Petitioner claims that failing to raise this issue on appeal entitles him to

22 habeas relief as reversal might have occurred had the issue been presented to the state courts.

23         As with the previous claim, there was no reasoned rejection by the state courts.

24 This court is obligated to apply AEDPA standards as a result of the fact that there has been an

25 adjudication on the merits, 28 U.S.C. § 2254(d), however, given the lack of reasoning provided

26 in the previous denials, it must conduct an "independent review of the record . . . to determine

1   whether the state court clearly erred in its application of controlling federal law." <u>Delgado v.</u>

2   <u>Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  Upon review of the record, it is clear that the state

3   court decision was objectively reasonable.  <u>See</u> <u>Williams</u>, 529 U.S. 409.

4          The test for demonstrating ineffective assistance of appellate counsel is set forth

5   in  <u>Strickland</u>, 466 U.S. at 668, and has been thoroughly explained in previous sections of these

6   findings and recommendations.  <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000)(reaffirming

7   application of <u>Strickland</u> to claim of attorney error on appeal).  Again, just as those previous

8   sections found no error, no violation occurred in this instance.  There was no apparent Fifth

9   Amendment error or prejudice resulting from the prosecutor's comments in this case.  Were the

10  court to presume error, it cannot be shown that prejudice resulted and that reversal would be

11  required.  Consequently, it can hardly be considered ineffective to have failed to raise this issue

12  on appeal.  Neither appellate nor trial counsel have any obligation to raise claims that do not

13  provide any basis for reversal.  <u>See</u> <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001).  The

14  court recommends denial of petitioner's seventh claim for relief.

15         For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

16  application for a writ of habeas corpus be denied.

17         These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  The parties are advised

23  /////

24  /////

25  /////

26  /////

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 11, 2006.


_____
UNITED STATES MAGISTRATE JUDGE

13/habeas
Hoga2660.157

32